Case No.: 24-60332

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Vertigo Vapor, Inc., d/b/a Baton Vapor;
Max & Zach's Vapor Shops Inc.,

*Petitioners,*

v.

U.S. Food and Drug Administration; Robert M. Califf, M.D., Commissioner; U.S. Department of Health and Human Services; Xavier Becerra, Secretary,

*Respondents.*

On Review Of FDA Marketing Denial Order
Issued Under The Federal Tobacco Control Act

**PETITIONERS' OPPOSITION TO MOTION TO DISMISS**

Eric P. Gotting
KELLER AND HECKMAN LLP
1001 G Street, N.W.
Suite 500 West
Washington, D.C. 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
gotting@khlaw.com
*Counsel for Petitioners*

No. 24-60332, *Vertigo Vapor, Inc., et al. v. FDA, et al.*

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

**No. 24-60332; Vertigo Vapor, Inc., et al. v. FDA, et al.**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Vertigo Vapor, Inc., d/b/a Baton Vapor (Petitioner)
2. Max & Zach's Vapor Shops Inc. (Petitioner)
3. Eric P. Gotting (counsel for Petitioners)
4. Azim Chowdhury (counsel for Petitioners)
5. U.S. Food and Drug Administration (Respondent)
6. U.S. Department of Health and Human Services (Respondent)
7. Hon. Merrick B. Garland (U.S. Attorney General)
8. Xavier Becerra (Respondent; HHS Secretary)
9. Samuel R. Bagenstos (HHS General Counsel)
10. Mark Raza (HHS Chief Counsel)
11. Robert M. Califf (Respondent; FDA Commissioner)
12. Brian King (Director, FDA Center for Tobacco Products)
13. Wendy S. Vicente (FDA Deputy Chief Counsel for Litigation)
14. Brian M. Boynton (Principal Deputy Assistant Attorney General)

15. Lindsey E. Powell (counsel for Respondents)

16. Kevin B. Soter (counsel for Respondents)

17. Leah A. Edelman (FDA Associate Chief Counsel)

18. Elizabeth Teter-Gossmann (counsel for Respondents)

Petitioner Vertigo Vapor, Inc. does not have any parent corporation or any publicly held corporation that owns 10% or more of its stock.

Petitioner Max and Zach's Vapor Shops Inc. does not have any parent corporation or any publicly held corporation that owns 10% or more of its stock.

/s Eric P. Gotting

Respondents filed a motion to dismiss arguing venue is improper in this Circuit under the Family Smoking Prevention and Tobacco Control Act ("TCA"). 21 U.S.C. § 387*l*(a)(1).  Specifically, they argue that: (i) Petitioner Vertigo Vapor, Inc., d/b/a Baton Vapor ("Vertigo Vapor") (an electronic nicotine device system ("ENDS") manufacturer) is not headquartered in this Circuit, and that Petitioner Max & Zach's Vapor Shops Inc. ("Max & Zach's) (a retailer selling Vertigo Vapor's products), which is located in this Circuit, is not a "person adversely affected" by the challenged marketing denial order ("MDO") issued to Vertigo Vapor by Respondent U.S. Food and Drug Administration ("FDA"); and (ii) even if Max & Zach's suit is properly venued here that the petition must be dismissed because all petitioners must be located in this Circuit.  Respondents are wrong and this Court should find venue is proper and deny the motion to dismiss.

To begin, this Court has already twice rejected Respondents' attempts to dismiss a similar case based on venue and thus their motion is foreclosed.  *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 188 (5th Cir. 2023); *R.J. Reynolds Vapor Co. v. FDA*, 2024 WL 1945307, at *1-2 (5th Cir. 2024) (unpublished).  In that matter, which also involved FDA's issuance of an MDO under the TCA, the petitioner manufacturer was not headquartered in this Circuit (it is based in North Carolina), but the petitioner retailers (who sold the petitioner manufacturer's products) were located in this Circuit and therefore venue was proper.

1

Indeed, in light of those decisions, the venue issue is now settled law in this Circuit and, not surprisingly, Respondents style their motion to dismiss as simply preserving venue as a defense in the event the U.S. Supreme Court grants their writ petition on the 2024 *RJR* decision and ultimately reverses this Court. Mot. to Dismiss at 1 ("the government hereby preserves its argument"); *id.* at 3 (the "government recognizes that this Court has held that venue was proper in this Circuit in a case presenting similar circumstances" and that it "files this motion to dismiss to preserve the issue for further review").

Moreover, even if Respondents' motion to dismiss serves as more than a mere reservation of rights, this Court should still deny the motion on the merits. As to Respondents' first argument, the plain language of Section 387*l*(a)(1) is expansive – it provides that "*any person* adversely affected by" an MDO may challenge that decision in court, which naturally includes retailers selling the subject ENDs (emphasis added). It is not limited to manufacturers. *See RJR*, 2024 WL 1945307, at *1-2. Indeed, Respondents never argue (because they cannot) Max & Zach's has gone unscathed by the MDO where it will otherwise suffer significant business losses in the form of lost sales and incur compliance costs.

Further, in its motion, Respondents argue in conclusory fashion that allowing a retailer to challenge an MDO would render the venue provisions in Section 387*l* "surplusage" and cannot be reconciled with other TCA provisions.

Mot. to Dismiss at 2 (citing dissent in *RJR*, 2024 WL 1945307, at *2). Not so. There are many reasons why a retailer would seek, separate and apart from a manufacturer, judicial review of an MDO (*e.g.*, because the retailer, like Max and Zach's here, will no longer be able to sell the subject ENDS products). Indeed, this Court has found that retailers have independent grounds to establish statutory standing under the TCA. *See RJR*, 2024 WL 1945307, at *1. And the TCA provisions cited by Respondents governing who can challenge an FDA withdrawal of a marketing granted order or protecting the confidentiality of a manufacturer's premarket application do not undermine the broad language of the entirely separate venue provision set out in Section 387*l*(a)(1). *See id.* at *1-2.

Additionally, retailers easily come within the zone of interests of the TCA. The zone-of-interests test that courts apply to determine when a party is sufficiently aggrieved to challenge agency action "is not meant to be especially demanding." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). A party has statutory standing if it asserts an interest that is "arguably" protected or regulated by the statute. *E.g.*, *id.* at 225–26. All that is required is "some indicia—however slight—that the litigant before the court was [(i)] intended to be protected … or [(ii)] regulated by the statute"—either suffices. *Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 228 (D.C. Cir. 1986). Here, it is clear that the TCA both regulates and protects retailers. *E.g.*, 21 U.S.C. §§ 331,

387b(6) (prohibiting retailers from selling unauthorized products); 21 U.S.C. § 387f (preserving retailers' ability to sell tobacco products by forbidding FDA from banning all cigarettes and certain other product categories).

Finally, although protecting minors against access to tobacco products is one goal of the TCA, another purpose is to permit the sale of tobacco products to adult smokers, such as those sold by Max & Zach's, that are less risky than traditional cigarettes. *See id.* at *2; *see also* TCA § 3(7), 123 Stat. 1776, 1782 (codified at 21 U.S.C. § 387 note). As such, it makes sense that Congress would have allowed retailers to challenge an unlawful MDO under the TCA.

Regarding Respondents' second argument that each petitioner must independently establish venue, Respondents are again wrong and their purported authority is inapposite. The TCA's judicial review provision—which allows "*any* adversely affected person" to sue in the circuit "in which such person resides or has their principal place of business," 21 U.S.C. § 387*l*(a)(1) (emphasis added)—applies to venue in suits against the federal government in the circuit courts. As such, Section 387*l* was enacted against a long-standing backdrop of similarly worded venue provisions governing suits against the government that have uniformly been interpreted to mean that venue needs to be proper for only one petitioner or plaintiff. *See*, *e.g.*, 28 U.S.C. § 2343 (Hobbs Act providing venue shall be "in the judicial circuit in which the petitioner resides or has its principal

4

office" or the D.C. Circuit); *Global Van Lines, Inc. v. ICC*, 691 F.2d 773, 774 n.1 (5th Cir. 1982) ("Because one of the petitioners is a corporation organized and existing under the laws of the state of Texas, venue is properly in this Court.").

Likewise, the general venue statute, which authorizes suits against the federal government "in any judicial district in which … the plaintiff resides," 28 U.S.C. § 1391(e)(1)(C), has been uniformly interpreted to mean that venue can be established by *any* plaintiff. *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 344-45 (6th Cir. 2005) ("Each court faced with the same issue has interpreted 'the plaintiff' to mean 'any plaintiff,' finding that Congress intended to broaden the number of districts in which suits could be brought against government entities.").

To support their argument, Respondents cite to a Century-plus-old decision interpreting an irrelevant statute that is no longer on the books. Specifically, the statute in *Smith v. Lyon*, 133 U.S. 315 (1890), governed diversity jurisdiction in district courts and was viewed as preventing suit where plaintiffs were from different states. It did not even purport to address cases against the federal government. The statute provided that "suit shall *only* be brought in the district of the residence of *either* the plaintiff or defendant." *Smith*, 133 U.S. at 317 (emphasis added). In stark contrast, TCA's venue provision has no similarly restrictive language. Rather, it allows "*any* adversely affected person" to sue in the

5

circuit "in which such person resides or has their principal place of business."  21 U.S.C. § 387*l*(a)(1) (emphasis added).  Thus, *Smith* has no application here.

In fact, Respondents' argument makes no sense in light of 28 U.S.C. § 2112(a).  Even if this Court were to dismiss the petition as to Vertigo Vapor, thus leaving only Max and Zach's to litigate in this circuit, Vertigo Vapor's case would be immediately returned from the 9th Circuit as the 5th Circuit action was instituted first.  Otherwise forcing litigants to file in their home circuits and separately challenge the same MDO would waste both the courts' and the parties' time and resources.  *Ry. Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 958 F.2d 252, 256 (9th Cir. 1991) (noting importance of "avoid[ing] a multiplicity of similar suits in different courts").  Congress could not have intended such an anomalous result.

Based on the foregoing, this Court should deny the motion to dismiss.

Dated: July 19, 2024

6

/s Eric P. Gotting
Eric P. Gotting
KELLER AND HECKMAN LLP
1001 G Street, NW
Suite 500 West
Washington, DC 20001
Telephone: (202) 434-4100
Facsimile: (202) 434-4646
gotting@khlaw.com
*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

I hereby certify the foregoing complies with the length limitations of Federal Rule of Appellate Procedure ("Rule") 27(d)(2)(A) because it is 1399 words, excluding the parts that are exempted under Rule 32(f). It complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it is printed in 14-point Times New Roman font.

/s Eric P. Gotting
Eric P. Gotting

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, a true and correct copy of the foregoing was filed via the Court's CM/ECF system and served via electronic filing upon all counsel of record in this case.

/s Eric P. Gotting
Eric P. Gotting
